**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

---

|  |  |  |
|---|---|---|
| THE ESTATE OF RICHARD JENKINS, *et al*., | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 21-cv-03098-LKG |
| v. | ) ) | Date:  September 15, 2025 |
| AMERICAN FUNDS DISTRIBUTOR, INC., | ) ) ) | |
| Defendant. | ) ) ) | |

---

## MEMORANDUM OPINION

### I.    INTRODUCTION

In this civil action, the Plaintiffs, The Estate of Richard Jenkins, Nicolette Viering and Victoria Jenkins, bring a breach of contract claim against the Defendant, American Funds Distributors, Inc. ("AFD"), arising from Richard Jenkins' participation in the Waldorf Ford, Inc. Salary Deferral 401(k) Profit Sharing Plan (the "Plan").  *See generally* ECF No. 11.  AFD has moved for summary judgment on this claim, pursuant to Fed. R. Civ. P. 56.  ECF Nos. 65 and 65-1.  The motion is fully briefed.  ECF Nos. 65, 65-1, 69 and 70.  No hearing is necessary to resolve the motion.  L.R. 105.6 (D. Md. 2025).  For the reasons that follow, the Court: (1) **GRANTS** AFD's motion for summary judgment (ECF No. 65); (2) **ENTERS JUDGMENT** summarily in favor of AFD on the Plaintiffs' breach of contract claim; and (3) **DISMISSES** the amended complaint (ECF No. 11).

### II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

#### A.  Factual Background

In this civil action, the Plaintiffs assert a breach of contract claim against AFD arising from Richard Jenkins' participation in the Plan.  *See generally* ECF No. 11.  As relief, the

---

[1] The facts recited in this memorandum opinion are taken from the amended complaint; AFD's motion for summary judgment; the memorandum in support thereof; the parties' joint stipulation of facts; and the joint record.  ECF Nos. 11, 65, 65-1, 65-2 and 71.

Plaintiffs seek, among other things, certain declaratory relief and to recover monetary damages, attorneys' fees and costs from AFD.  *Id.* at Prayer for Relief.

The Parties

Plaintiff The Estate of Richard Jenkins is the legal representative of the decedent, Richard Jenkins.  *Id.* at ¶ 3.

Plaintiff Nicolette Viering is a resident of the State of Maryland and the daughter of Richard Jenkins.  *Id.* at ¶ 4.

Plaintiff Victoria Jenkins is a resident of the State of Maryland and the daughter of Richard Jenkins.  *Id.* at ¶ 5.

Defendant AFD is a California-based broker-dealer and investment advisor legal entity that is registered with the Securities and Exchange Commission.  ECF No. 65-1 at 2.  AFD is an affiliate of the Capital Group Companies, Inc., which is a California-based holding company.  *Id.*

Case Background

As background, this civil action involves a dispute between the parties regarding the proceeds from two life insurance policies and a 401(k) plan, following the death of Richard Jenkins in 2020.  *See generally* ECF No. 11.  Prior to his death, Mr. Jenkins was employed by Waldorf Ford Inc. ("Waldorf Ford"), and he participated in the Plan.  ECF No. 65-2 at ¶ 5 (Joint Statement of Undisputed Facts).  Mr. Jenkins did not make any beneficiary designation in connection with his participation in the Plan.  ECF No. 71 at J.R. 0011-0012 (Def.'s Ans. Pls.' Interrog. No. 4).

Mr. Jenkins died on August 18, 2020.  *See* ECF No. 65-2 at ¶ 19.  At the time of his death, Mr. Jenkins was married to Lovely Jenkins.  *See id.*  Prior to his death, Mr. Jenkins and Lovely Jenkins executed a prenuptial agreement, in which Lovely Jenkins denounced and waived any right or interest in Mr. Jenkins' property and affirmed that no property would be considered marital property.  *Id.* at ¶ 4.

On October 14, 2020, Lovely Jenkins completed a Beneficiary Claim form and submitted this form to Waldorf Ford.  *Id.* at ¶ 21.  Thereafter, the Vice President and CFO of Waldorf Ford, Mike Cellini, executed the Death Benefit Claim Request, directing the Trustee for the Plan, Capital Bank and Trust Company (the "Trustee"), to distribute the funds in Mr. Jenkins' Plan account to Lovely Jenkins.  *See* ECF No. 71-2 at J.R. 0489-0496 (Death Benefit Claim Request); ECF No. 65-1 at 7.  And so, the Trustee distributed these

2

funds to Lovely Jenkins. *See* ECF No. 71 at J.R. 0011 (Def.'s Ans. Pls.' Interrog. No. 4); *see also* ECF No. 11 at ¶ 27.

The Plaintiffs did not file a written claim for benefits with Waldorf Ford. *See* ECF No. 71 at J.R. 0039-0040 (Pls.' Ans. Def.'s Interrog. No. 11). But, on September 13, 2020, the Plaintiffs informed AFD that they were concerned that someone may have fraudulently altered Mr. Jenkins' beneficiary designations with regards to the Plan. ECF No. 65-2 at ¶ 20. The Plaintiffs also informed AFD that Lovely Jenkins had signed a prenuptial agreement on December 9, 2010, expressly waiving any interest she might have to the proceeds of the Plan. *Id.*

<u>The Plan</u>

The relevant details about Mr. Jenkin's 401(k) plan are provided below. On May 15, 2019, Waldorf Ford entered into a certain 2021 Adoption Agreement, which created the Plan. ECF No. 65-2 at ¶¶ 6-7. It is undisputed that Waldorf Ford is the employer, Plan Sponsor and Plan Administrator for the Plan. *Id.* at ¶ 10; *see also* ECF No. 71-1 at J.R. 0425 (identifying Waldorf Ford as the "Plan's Administrator"). It is also undisputed that the Plan provides that the "Plan Administrator" is "the Employer unless the Employer designates another person or persons committee or organization to hold the position of Plan Administrator." ECF No. 65-2 at ¶ 11; ECF No. 71 at J.R. 0065 (definition section of the Plan).

Waldorf Ford also entered into a Trust Agreement with the Trustee to establish a Trust Fund to receive, invest and distribute contributions to the Plan. ECF No. 65-2 at ¶ 8. In addition, Waldorf Ford entered into a Plan Premier Recordkeeping and Administrative Services Agreement with Capital Group Retirement Plan Services to provide certain record-keeping and administrative support services related to the Plan. *Id.* at ¶ 12.

Relevant to the pending motion for summary judgment, the terms of the Plan provide the rules for the designation of the beneficiary of a Plan participant's vested balance upon his or her death. *Id.* at ¶ 13; *see* ECF No. 70 at J.R. 0132. Specifically, the Plan provides that the following rules apply with regards to the distribution the Plan participant's account balance to a "Default Beneficiary," when a Plan participant fails to identify a beneficiary:

> If: (i) a Participant fails to name a Beneficiary in accordance with Section 7.05(A); or (ii) the Beneficiary (and all contingent or successive Beneficiaries) whom the Participant designates predecease the

Participant, are invalid for any reason, or disclaim the Participant's Vested Account Balance and the Plan Administrator has accepted the disclaimers as valid, then the Trustee . . . will distribute the Participant's Vested Account Balance in accordance with Section 6.03 in the following order of priority to . . . [1] the Participant's surviving spouse . . . and if no surviving spouse to . . . [2] the Participant's children . . . .

ECF No. 71 at J.R. 0133; ECF No. 65-2 at ¶ 14.

The Plan also provides the following instructions for designating a beneficiary other than the spouse of the Plan participant, when the Plan participant is married:

**Married Participant.** If you are married at the time of your death, your spouse will be the beneficiary of the entire death benefit unless you designate in writing a different beneficiary. IF YOU WISH TO DESIGNATE A BENEFICIARY OTHER THAN YOUR SPOUSE, YOUR SPOUSE MUST IRREVOCABLY CONSENT TO WAIVE ANY RIGHT TO THE DEATH BENEFIT. YOUR SPOUSE'S CONSENT MUST BE IN WRITING, BE WITNESSED BY A NOTARY OR A PLAN REPRESENTATIVE AND ACKNOWLEDGE THE SPECIFIC NON-SPOUSE BENEFICIARY.

**Changes to designation.** If, with spousal consent as required, you have designated someone other than your spouse as beneficiary and now wish to change your designation, see the Plan Administrator for details. In addition, you may elect a beneficiary other than your spouse without your spouse's consent if your spouse cannot be located.

ECF No. 71-2 at J.R. 0515; ECF No. 65-2 at ¶ 16.  Lastly, the Plan sets forth the following procedure for resolving disputes about the proper beneficiary for the distribution of the Plan assets:

A Participant or a Beneficiary may file with the Plan Administrator a written claim for benefits, if the Participant or Beneficiary disputes the Plan Administrator's determination regarding the Participant's or Beneficiary's Plan benefit. However, the Plan will distribute only such Plan benefits to Participants or Beneficiaries as the Plan Administrator in its discretion determines a Participant or Beneficiary is entitled to receive. The Plan Administrator will create a written claims procedure as part of (or which accompanies) the Plan's summary plan description. This Section 7.05(I) specifically incorporates the written claims procedure as from time to time published by the Plan Administrator as part of the Plan . . . . If the Plan Administrator pursuant to the Plan's written claims procedure makes a final written determination denying a Participant's or Beneficiary's benefit claim, the Participant or Beneficiary to preserve the claim must file an action with respect to the

denied claim not later than 180 days following the date of the Plan
Administrator's final determination.

ECF No. 71 at J.R. 0133; ECF No. 65-2 at ¶ 17.

The Plaintiffs' Breach Of Contract Claim

The remaining claim in this case is a breach of contact claim brought against AFD.
*See* ECF No. 11 at ¶¶ 34-38.  Specifically, the Plaintiffs allege that the Plan "documents
represent a contract between [AFD] and Richard Jenkins for the payment of death benefits
to specified beneficiaries." *Id.* at ¶ 35.  The Plaintiffs also allege that this contract
agreement "incorporates Richard Jenkins' freedom to designate the individual(s) he
intended to receive benefits upon his death." *Id.*  In addition, the Plaintiffs allege the
"implied duty of good faith and fair dealing" required AFD to "investigate the claims of
fraud" brought to its attention by the Plaintiffs regarding the distribution of Mr. Jenkins'
Plan funds. *Id.* at ¶ 36.

Given this, the Plaintiffs contend that AFD's breach of "the implied duty of good
faith and fair dealing and/or payment of the [Plan] benefits to Lovely Jenkins" constitutes a
"breach of contract in that it failed to perform its obligations under the contract or more
specifically to pay the insurance proceeds to Richard Jenkins' intended beneficiaries." *Id.* at
¶ 37.  And so, the Plaintiffs seek certain declaratory relief and to recover monetary damages,
attorneys' fees and costs from AFD. *Id.* at Prayer for Relief.

**B.  Relevant Procedural Background**

The Plaintiffs commenced this civil action on December 3, 2021, and they amended the
complaint on January 5, 2022.  ECF Nos. 1 and 11.

On December 13, 2024, AFD filed a motion for summary judgment, pursuant to Fed. R.
Civ. P. 56, and a memorandum in support thereof.  ECF Nos. 65 and 65-1.  On January 21, 2025,
the Plaintiffs filed a response in opposition to AFD's motion.  ECF No. 69.

On February 14, 2025, AFD filed a reply brief in support of its motion for summary
judgment and the joint record of exhibits.  ECF Nos. 70 and 71.

AFD's motion for summary judgment having been fully briefed, the Court resolves the
pending motion.

III.    LEGAL STANDARDS

    A.  Fed. R. Civ. P. 56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co*., 773 F.2d 592, 595 (4th Cir. 1985).  In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).  But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim.  *See Celotex Corp.*, 477 U.S. at 322-23.  Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Id.* at 323.  And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence to show the existence of a genuine issue for trial.  *See Anderson*, 477 U.S. at 256.

In this regard, the United States Court of Appeals for the Fourth Circuit has held that "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment."  *Detrick v. Panalpina, Inc*., 108 F.3d 529, 536 (4th Cir. 1997).  And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

Lastly, Federal Rule of Civil Procedure 56(d) provides that, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its

opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). The Fourth Circuit has cautioned that the "[C]ourt should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014) (citing *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 196-97 (4th Cir. 2006)). But, the Court "may deny a Rule 56(d) motion when the information sought would not by itself create a genuine issue of material fact sufficient for the nonmovant to survive summary judgment." *Id.* (citing *Yelton*, 439 F.3d at 195). And so, the Court should deny a Rule 56(d) motion "when two conditions are met: (1) the plaintiff 'had a reasonable opportunity' to conduct discovery, and (2) the plaintiff did not 'identify any specific information that would create a genuine dispute of material fact.'" *Gordon v. CIGNA Corp.*, 890 F.3d 463, 478 (4th Cir. 2018) (quoting *Hodgin v. UTC Fire & Sec. Ams. Corp.*, 885 F.3d 243, 250 (4th Cir. 2018)).

### B. ERISA

The Employee Retirement Income Security Act ("ERISA") governs the minimum standards for most voluntarily established retirement and health plans in private industry. *See* 29 U.S.C. §§ 1001-1461. ERISA defines an "employee pension benefit plan" as follows:

> [A]ny plan, fund, or program which was . . . established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—(i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond . . . .

29 U.S.C. § 1002(2)(A). "ERISA does not contain an explicit exhaustion provision, . . . [but] an ERISA claimant generally is required to exhaust the remedies provided by the employee benefit plan in which he participates as a prerequisite to an ERISA action for denial of benefits under [Section 502(a)]." *Wilson v. UnitedHealthcare Ins. Co.*, 27 F.4th 228, 241 (4th Cir. 2022) (quoting *Makar v. Health Care Corp. of Mid-Atl.*, 872 F.2d 80, 82 (4th Cir. 1989)). And so, ERISA applies if there is: (1) a plan, fund or program; (2) established or maintained; (3) by an employer, employee organization, or both; (4) that provides retirement income to employees or results in a deferral of income by employees. *See* 29 U.S.C. § 1002(2)(A); *cf. Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 417 (4th Cir. 1993).

There are two provisions in ERISA that may preempt a state law claim.  First, Section 502(a) of ERISA provides that a civil action may be brought by a participant or beneficiary to, among other things, "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  "A suit to recover ERISA benefits may be brought only against the plan, the plan administrator, or a plan fiduciary."  *Valderrama v. Honeywell TSI Aerospace Servs.*, No. 09-cv-2114, 2010 WL 2802132, at *6 (D. Md. July 14, 2010) (citing *Gluth v. Wal-Mart Stores, Inc.*, No. 96-1307, 1997 WL 368625, at *6 (4th Cir. June 3, 1997)).

Relevant here, the Supreme Court has held that "Congress clearly expressed an intent that the civil enforcement provisions of ERISA § 502(a) be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits."  *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52 (1987).  Notably, the Supreme Court observed that:

> In sum, the detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress had rejected in ERISA.

*Id.* at 54.  The Supreme Court has also held that no state law may "duplicate[], supplement[], or supplant[] the ERISA civil enforcement remedy."  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) (citations omitted).  And so, generally, Section 502(a)(1)(B) provides the exclusive avenue for participants or beneficiaries to bring a cause of action to recover benefits and enforce rights under an ERISA plan.  *See id.*; *see also* 29 U.S.C. § 1132(a)(1)(B).  The Fourth Circuit has also held that Section 502(a) of ERISA "completely preempts a state claim" when: (1) the plaintiff has "standing under Section 502(a)" to pursue their claim; (2) the claim "fall[s] within the scope of an ERISA provision that [the plaintiff] can enforce via § 502(a)"; and (3) the claim is not "capable of resolution 'without an interpretation of the contract governed by federal law,' *i.e.,* an ERISA-governed employee benefit plan."  *Prince v. Sears Holdings Corp.*, 848 F.3d 173, 177 (4th Cir. 2017) (quoting *Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d

366, 372 (4th Cir. 2003)).

Given this, a state law claim is "completely preempted . . . if it fits within the scope of ERISA § 502." *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 191 n.3 (4th Cir. 2002). "[W]hen a claim under state law is completely preempted and . . . falls within the scope of § 502, the . . . [C]ourt should not dismiss the claim as preempted, but should treat it as a federal claim under § 502." *Id.* at 195; *see also Prince*, 848 F.3d at 177 ("[C]omplete preemption 'converts an ordinary state common law complaint into one stating a federal claim.'" (quoting *Darcangelo*, 292 F.3d at 187)).

Second, the Fourth Circuit has held that "ERISA § 514 expressly states the scope of ordinary conflict preemption under ERISA: state laws are superseded insofar as they 'relate to' an ERISA Plan." *Darcangelo*, 292 F.3d at 187 (quoting 29 U.S.C. § 1144(a)). And so, "a state law [is preempted and] 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Pilot Life Ins.*, 481 U.S. at 47 (quoting *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985)).

## IV.    ANALYSIS

AFD has moved for summary judgment on the Plaintiffs' breach of contract claim, pursuant to Fed. R. Civ. P. 56, upon three grounds. First, AFD argues that the Plaintiffs' breach of contract claim must fail as a matter of law, because this claim is preempted by Sections 502 and 514 of ERISA. ECF No. 65-1 at 9-13. Second, AFD argues that, even if the Plaintiffs' breach of contract claim is recast as a claim for ERISA benefits, the claim still fails, because: (1) AFD is not the proper defendant to be sued under Section 502(a) of ERISA; (2) the Plaintiffs failed to exhaust administrative remedies; and (3) the Plaintiffs' ERISA claim, based upon a prenuptial agreement, is insufficient to divest ERISA pension benefits from being paid to Lovely Jenkins. *Id.* at 13-20. And so, AFD requests that the Court enter summary judgment in its favor on the Plaintiffs' breach of contract claim. *Id.* at 21.

The Plaintiffs counter that summary judgment is not warranted on their claim, because they cannot successfully respond to AFD's motion for summary judgment without first conducting discovery to obtain certain information related to Mr. Jenkins' beneficiary designation and any notices provided regarding the claims process under the Plan. ECF No. 69 at 1-3. The Plaintiffs also argue that AFD is not entitled to summary judgment on their breach of contract claim, because AFD failed to "provide documents illustrating Richard Jenkins'

beneficiary designations or demonstrating that he or his executors were on notice of plan requirements for claims." *Id.* at 3. And so, the Plaintiffs request that the Court deny AFD's motion for summary judgment. *Id.*

For the reasons that follow, the undisputed material facts in this case show that the Plaintiffs' breach of contract claim is preempted by ERISA. The undisputed material facts also show that, if treated as an ERISA claim for benefits, the Plaintiffs' claim also fails, because the Plaintiffs have neither exhausted their administrative remedies, nor brought suit against the proper defendant for their ERISA claim. Lastly, the Plaintiffs have not identified any specific information that would create a genuine dispute of material fact and, thus, preclude entry of summary judgment on their claim. And so, the Court: (1) GRANTS AFD's motion for summary judgment (ECF No. 65); (2) ENTERS JUDGMENT summarily in favor of AFD with regards to the Plaintiffs' breach of contract claim; and (3) DISMISSES the amended complaint (ECF No. 11).

### A. The Plaintiffs' Breach Of Contract Claim Is Preempted By ERISA

As an initial matter, there can be no genuine dispute in this case that the Plaintiffs' breach of contract claim against AFD is preempted by Sections 514 and 502 of ERISA. For this reason, the Plaintiffs cannot prevail on their breach of contract claim.

First, the undisputed material facts show that the Plaintiffs' breach of contract claim is preempted by Section 514 of ERISA, because the Plaintiffs' claim relates to an employee pension benefit plan. In this regard, the Fourth Circuit has held that "Section 514 of ERISA defines the scope of ERISA's preemption of conflicting state laws: state laws are superseded insofar as they 'relate to' an ERISA plan." *Darcangelo*, 292 F.3d at 194 (quoting 29 U.S.C. § 1144(a)). The Supreme Court has also held that "a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Pilot Life Ins.*, 481 U.S. at 47 (quoting *Metropolitan Life Ins. Co.*, 471 U.S. at 739).

In this case, the undisputed material facts make clear that the Plaintiffs' breach of contract claim against AFD has a connection with, and makes reference to, Mr. Jenkin's 401(k) plan. *See* ECF No. 11 at ¶¶ 34-38. Notably, there is no dispute that Mr. Jenkins participated in an ERISA employee retirement benefits plan. *See* ECF No. 65-2 at ¶¶ 5-7; ECF No. 65-2 at ¶¶ 5-8 (showing that Waldorf Ford created the Plan); ECF No. 71-2 at J.R. 0506 (showing that the Plan "has been adopted to provide . . . the opportunity to save for retirement on a tax-

advantaged basis").  The amended complaint also makes clear that the Plaintiffs allege that the documents for the Plan constitute a contract by and between AFD and Mr. Jenkins and that AFD breached this contract by, among other things, distributing the proceeds under the Plan to Lovely Jenkins.  ECF No. 11 at ¶¶ 35 and 37.

Given this, the undisputed material facts show that the Plaintiffs' state law breach of contract claim is related to the Plan.  For this reason, the Plaintiffs' claim is preempted by Section 514 of ERISA.  *See Darcangelo*, 292 F.3d at 187 (recognizing that under ordinary conflict preemption, state law claims that conflict with federal law are preempted and preemption is asserted as a federal defense to the plaintiff's suit).

The undisputed material facts also make clear that the Plaintiffs' breach of contract claim against AFD is completely preempted by Section 502(a) of ERISA.  In this regard, Section 502(a) of ERISA provides a comprehensive civil enforcement scheme for claims brought under that statute.  *Pilot Life Ins. Co.*, 481 U.S. at 54.  The Supreme Court has held that "Congress clearly expressed an intent that the civil enforcement provisions of ERISA § 502(a) be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits."  *Id.* at 52.  Given this, Section 502(a) of ERISA completely preempts the Plaintiffs' state law breach of contract here, if: (1) the Plaintiffs have standing under Section 502(a) to pursue their claim; (2) the claim falls within the scope of an ERISA provision that they can enforce *via* § 502(a); and (3) the claim is not capable of resolution without an interpretation of the contract governed by federal law, such as an ERISA-governed employee pension benefit plan.  *See Prince*, 848 F.3d at 177 (citing *Sonoco Prods. Co.*, 338 F.3d at 372); *see also Darcangelo*, 292 F.3d at 191 n.3 (A state law claim, such as a breach of contract claim, is "completely preempted . . . if it fits within the scope of ERISA § 502."). [2]

In this case, there can be no genuine dispute that the requirements for Section 502 preemption have been met.  The undisputed material facts show that the Plaintiffs have standing to pursue an ERISA claim under Section 502(a), because The Estate of Richard Jenkins is the

---

[2] "[W]hen a claim under state law is completely preempted and . . . falls within the scope of § 502, the . . . [C]ourt should not dismiss the claim as preempted, but should treat it as a federal claim under § 502." *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 187 (4th Cir. 2002); *see also Prince v. Sears Holdings Corp.*, 848 F.3d 173, 187 (4th Cir. 2017) ("[C]omplete preemption 'converts an ordinary state common law complaint into one stating a federal claim.'" (citation omitted)).

legal representative of the decedent, Richard Jenkins, and Mr. Jenkins was a participant under the Plan. *See* ECF No. 11 at ¶ 3; *see also* 29 U.S.C. § 1132(a)(1)(B) (providing that a civil action may be brought by a "participant or beneficiary" of an ERISA plan).

A careful reading of the amended complaint also shows that the Plaintiffs' breach of contract claim against AFD falls within the scope of Section 502(a), because the Plaintiffs seek to recover beneficiary benefits, and to enforce their rights, under the terms of the Plan. *See* ECF No. 11 at ¶¶ 35 and 37 (alleging that AFD's breach of "the implied duty of good faith and fair dealing and/or payment of the [Plan] benefits to Lovely Jenkins" constitutes a "breach of contract in that it failed to perform its obligations under the contract or more specifically to pay the insurance proceeds to Richard Jenkins' intended beneficiaries"); *see also* 29 U.S.C. § 1132(a)(1)(B). In addition, the undisputed material facts make clear that the Plaintiffs' breach of contract claim is not capable of resolution without interpreting the Plan, because the Plan's provisions provide the method for identifying the proper beneficiary of under the Plan. *See* ECF No. 71 at J.R. 0133 (describing the default beneficiary); ECF No. 71-2 at J.R. 0515 (describing that the participant's "spouse will be the beneficiary of the entire death benefit unless [the participant] designate[s] in writing a different beneficiary"); ECF No. 65-2 at ¶¶ 14 and 16.

Given these undisputed material facts, the Plaintiffs' breach of contract claim against AFD clearly falls within the scope of ERISA's broad civil enforcement provision in Section 502. And so, Section 502 of ERISA completely preempts the Plaintiffs' state law breach of contract claim and converts this claim into an ERISA claim under Section 502(a)(1)(B) of ERISA. *See Darcangelo*, 292 F.3d at 187; *see also Prince*, 848 F.3d at 177.

### B. The Plaintiffs' ERISA Claim Fails As A Matter Of Law

AFD also persuasively argues that, once converted to an ERISA claim, the Plaintiffs' claim fails as a matter of law for two reasons.

First, the undisputed material facts in this case show that the Plaintiffs have not exhausted their administrative remedies with regards to their ERISA claim before commencing this civil action. While ERISA does not contain an explicit exhaustion provision, the Fourth Circuit has held that an ERISA claimant is generally required to exhaust the remedies provided by the employee benefit plan in which he or she participates, as a prerequisite to bringing an ERISA action for denial of benefits under Section 502(a). *Wilson*, 27 F.4th at 241 (citing *Makar*, 872

F.2d at 82).  ERISA's exhaustion requirement "means that [the Plaintiffs] must follow the Plan's internal procedures for a 'full and fair review' of a plan administrator's denial of a claim for benefits," before bringing a civil action.  *Id.* (quoting *Makar*, 872 F.2d at 83).

       In this case, the undisputed material facts show that the Plaintiffs did not exhaust their administrative remedies under the Plan before commencing this litigation.  In this regard, the undisputed evidence shows that the Plan at issue provides certain procedures for resolving disputes concerning the proper beneficiary for the distribution of the Plan assets, including that a "Participant or a Beneficiary may file with the Plan Administrator a written claim for benefits, if the Participant or Beneficiary disputes the Plan Administrator's determination regarding the Participant's or Beneficiary's Plan benefit."  ECF No. 71-2 at J.R. 0133; ECF No. 65-2 at ¶ 17.  The Summary Plan Description also sets forth the written claims process and the claims review procedure to be performed by the Plan Administrator.  *See* ECF No. 71-2 at J.R. 0518-0521 (describing how to "submit a claim for Plan benefits" to the "Plan Administrator" and the "claims review procedure").

       There is no dispute in this case that the Plaintiffs did not submit a written claim regarding the benefits at issue to the Plan Administrator, Waldorf Ford, before commencing this civil action.  *See* ECF No. 71 at J.R. 0039-0040 (Pls.' Ans. Def.'s Interrog. No. 11); ECF No. 65-2 at ¶ 10 (Joint stipulation of facts stating that "Waldorf Ford is the Employer, Plan Sponsor and Plan Administrator of the . . . Plan"); ECF No. 69 at 2-3.  Given this, the Plaintiffs failed to exhaust their administrative remedies under the terms of the Plan before commencing this litigation.  *See Wilson*, 27 F.4th at 241.

       The Plaintiffs' ERISA claim is also problematic, because there is no genuine dispute that AFD is not the Plan Administrator for the Plan.[3]  And so, AFD is not the proper defendant for the Plaintiffs' ERISA claim for benefits under Section 502(a).  *Valderrama*, 2010 WL 2802132, at *6 (citing *Gluth*, 1997 WL 368625, at *6) (holding that "[a] suit to recover ERISA benefits may be brought only against the plan, the plan administrator, or a plan fiduciary")

---

[3] The Plaintiffs allege in the amended complaint that AFD is the Plan Administrator.  ECF No. 11 at ¶¶ 7 and 23.  But, the undisputed material facts, and the parties' joint stipulation of facts, make clear that Waldorf Ford is the Plan Administrator.  *See* ECF No. 65-2 at ¶ 10 (Joint stipulation of facts stating that "Waldorf Ford is the Employer, Plan Sponsor and Plan Administrator of the . . . Plan"); ECF No. 71-1 at J.R. 0425 (identifying Waldorf Ford as the "Plan's Administrator").

For each of these reasons, AFD is entitled to summary judgment on the Plaintiffs'
ERISA claim.

### C.  The Plaintiffs Are Not Entitled To Relief Under Rule 56(d)

As a final matter, the Court also observes that the Plaintiffs have not shown that the
entry of summary judgment in AFD's favor is unwarranted in this case, because the
Plaintiffs cannot present facts essential to justify their opposition to AFD's motion for summary
judgment.  *See* ECF No. 69 at 2-3.  Pursuant to Federal Rule of Civil Procedure 56(d), "[i]f a
nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts
essential to justify its opposition, the [C]ourt may: (1) defer considering the motion or deny it;
(2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other
appropriate order."  Fed. R. Civ. P. 56(d).  But, the Court "may deny a Rule 56(d) motion when
the information sought would not by itself create a genuine issue of material fact sufficient for
the nonmovant to survive summary judgment."  *Pisano*, 743 F.3d at 931 (citing *Yelton*, 439 F.3d
at 195).  That is the circumstance presented here.

In this case, the Plaintiffs argue that they need to conduct discovery to obtain any
"communications and documents concerning Richard Jenkins' beneficiary designation (or
lack thereof) and notice of the plan claim requirements to oppose summary judgment."  ECF
No. 69 at 3.  But, the Plaintiffs have already had ample opportunity to conduct discovery on
these issues, because the parties engaged in extensive discovery, over a 10-month period,
prior to the filing of AFD's motion for summary judgment.  *See* ECF Nos. 34 and 44 (the
Court's Scheduling Orders).

The litigation history for this case also shows that AFD has provided information to
the Plaintiffs about the beneficiary distributions from the Plan.  ECF No. 59 at 8-9 (citing
Def.'s Resp. Pls.' Interrog. Nos. 4, 6, 8, 10, 11 and 13); *see also* ECF No. 71 at J.R. 0011
("Mr. Jenkins participated in the Employer Plan prior to his death on August 18, 2020, but
he never expressly designated a beneficiary for his plan assets.").  More importantly, the
Plaintiffs do not "identify any specific information that would create a genuine dispute of
material fact" related to the legal issues raised in AFD's motion for summary judgment, that
would preclude entry of summary judgment in this case.  *See Gordon*, 890 F.d at 478 (quoting
*Hodgin*, 885 F.3d at 250); ECF No. 69 at 2-3.  And so, the Plaintiffs have not shown that
they are entitled to relief under Rule 56(d).

The Plaintiffs also argue without persuasion that evidence regarding any notice that Mr. Jenkins or his executors received concerning claims under the Plan are relevant to the issue of whether they have exhausted administrative remedies under ERISA. *See* ECF No. 69 at 2-3. Simply put, the Plaintiffs do not explain how this information would create a genuine dispute of material fact regarding whether they exhausted administrative remedies under ERISA. *See id.* Given this, the Court declines to defer consideration of AFD's motion for summary judgment. *See Gordon*, 890 F.d at 478; Fed. R. Civ. P. 56(d).

## V.    CONCLUSION

For the foregoing reasons, the Court:

(1) **GRANTS** AFD's motion for summary judgment (ECF No. 65);

(2) **ENTERS JUDGMENT** summarily in favor of AFD with regards to the Plaintiffs' breach of contract claim; and

(3) **DISMISSES** the amended complaint (ECF No. 11).[4]


**IT IS SO ORDERED.**


s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

---

[4] The Court issued an Order consistent with this memorandum opinion on September 10, 2025. *See* ECF No. 77.